FILED
2022 Aug-30 PM 05:03
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
JASPER DIVISION**

**UNITED STATES OF AMERICA** )
)
v. ) **CASE NO.**
)
**KONIE MINGA** )

**PLEA AGREEMENT**

The government and the defendant, **KONIE MINGA**, hereby acknowledge the following plea agreement in this case:

**PLEA**

The defendant agrees to plead guilty to **COUNT ONE** of the Information filed in the above numbered and captioned matter. In exchange, the United States agrees to recommend the disposition specified below, subject to the conditions in Sections VII and VIII.

**TERMS OF THE AGREEMENT**

## I. MAXIMUM PUNISHMENT

The defendant understands that the maximum statutory punishment that may be imposed for the crime of misprision of felony in violation of Title 18, United States Code, Section 4, as charged in COUNT ONE is:

a. Imprisonment for not more than 3 years;

b. A fine of not more than $250,000; or,

 **Defendant's Initials** KM

c. Both (a and b);

d. Supervised release of not more than 1 year; and

e. Special Assessment Fee of $100 per count.

## II. FACTUAL BASIS FOR PLEA

### A. P.M.'s Exclusion and 2021 Conviction for Health Care Fraud

#### 1. Overview of Medicare Exclusion

The Medicare Program ("Medicare") is a federal health insurance program that provides medical benefits, items, and services to beneficiaries: (1) aged 65 and older, (2) under 65 with certain disabilities, and (3) of all ages with end-stage renal disease (permanent kidney failure requiring dialysis or a kidney transplant). Entities, such as physicians, clinics, and other health care providers, that desire to bill Medicare for services provided to Medicare beneficiaries are able to apply for and obtain a Medicare "provider number." Medicare provider numbers enable health care providers to file claims with Medicare to obtain reimbursement for services provided to beneficiaries.

Medicare requires providers accurately and truthfully complete a Medicare application to become providers. The application requires disclosure of parties with an "ownership interest and/or managing control" in the provider business. The application further requires Medicare providers to disclose any adverse legal history for all individuals and entities with an "ownership interest and/or managing control."

 Defendant's Initials KM

Adverse legal history includes any felony conviction for a financial crime, such insurance fraud or embezzlement, within ten years of the application. Medicare providers are also required to certify that neither the provider, nor any owner, partner, officer, director, managing employee, authorized official, or delegated official is currently sanctioned, suspended, debarred, or excluded by Medicare or otherwise prohibited from supplying services to Medicare. Medicare providers are required to update the application if this information changed. In general, once a provider is enrolled in Medicare, the provider is required to revalidate their enrollment every five years. When revalidating, a provider most confirm that the information submitted with the provider's initial application remains accurate.

The Department of Health and Human Services, Office of Inspector General (HHS OIG) has the authority to exclude providers and related individuals from Medicare if they fail to disclose required material information. Once excluded an individual may not serve in an executive or leadership role at a provider that furnishes items or services payable by Medicare. Also, an excluded individual may generally not provide other types of administrative and management services, such as information technology services and support, strategic planning, billing and accounting, staff training, and human resources. HHS OIG maintains a List of Excluded Individuals/Entities that identifies all currently excluded individuals and entities. HHS OIG recommends that healthcare entities routinely check the List of

 **Defendant's Initials** ~~KM~~

Excluded Individuals/Entities to ensure that new hires and current employees are not on it because they risk liability for employing excluded individuals.

**2. P.M.'s Exclusion from Medicare**

**a. P.M.'s 2010 Criminal Conviction**

On May 27, 2008, P.M. was charged in federal district court in the Northern District of Mississippi with wire fraud related to the sale of insurance, Case Number: 08-cr-00052-MPM-DAS. On April 5, 2010, P.M. entered a plea of guilty to the charge of wire fraud. On November 18, 2010, P.M. was sentenced by the court to three years' probation.

**b. P.M.'s Exclusion from Medicare**

At the time P.M. was charged, he had managing control of a durable medical equipment supplier called Medpoint. Medpoint at that time was operating in Amory, Mississippi and was enrolled in Medicare. After P.M. pled guilty and was sentenced, neither he nor anyone else with Medpoint updated Medpoint's Medicare enrollment information to notify CMS of P.M.'s conviction, which they were required to do.

Following an investigation by HHS OIG, on October 17, 2016, P.M. entered into an Exclusion Agreement with HHS OIG in which P.M. agreed to an exclusion from Medicare for ten years. The exclusion agreement provided that Medicare would not pay claims submitted by anyone who employed P.M. in a management or administrative role. The exclusion agreement further provided that P.M. would hold

Medicare harmless for any financial responsibility for claims submitted by any entity that employed him in a management or administrative role. The exclusion agreement further stated P.M. "understands that violations of the conditions of exclusion may subject him to criminal prosecution." In executing the exclusion agreement, P.M. acknowledged knowledge of its contents and entering into it voluntarily and with advice of counsel.

### 3. P.M.'s 2021 Criminal Conviction

Following his exclusion from Medicare, P.M. continued to manage and control pharmacies that billed Medicare by submitting claims for payment to Medicare. The pharmacies P.M. managed and controlled that submitted claims for payment to Medicare following his exclusion include the following:

| Pharmacy Name | State |
|---|---|
| Amory Discount Pharmacy LLC | MS |
| B & K Priority Care Pharmacy LLC | AL |
| Bowie's Priority Care Pharmacy LLC | AL |
| Burns Drugstore Inc. | AR |
| Main Street Drugs LLC | MS |
| Medical Park Pharmacy | AL |
| Ozark Family Pharmacy LLC | AR |
| Priority Care Pharmacy 2 LLC | AL |
| Priority Care Pharmacy at Cotton Gin Point LLC | MS |
| Priority Care Pharmacy LLC | MS |
| Priority Care Pharmacy Services LLC | MS |
| Priority Care Pharmacy Solutions LLC | MS |
| Priority Express Care Pharmacy LLC | MS |
| Tombigbee Pharmacy LLC | MS |
| Tupelo Specialty Pharmacy | MS |

 Defendant's Initials km

| Pharmacy Name | State |
|---|---|
| Vickers Pharmacy | AL |
| Vincent Priority Care Pharmacy, LLC | AL |

To avoid detection, P.M. had those submitting Medicare enrollment/revalidation paperwork for these pharmacies fail to disclose that P.M. had an ownership interest/managerial role in these pharmacies. P.M. further ensured that the Medicare enrollment/revalidation paperwork failed to disclose that P.M. had been excluded from participation in all Federal health care programs by falsely indicating that all employees of these pharmacies were checked against the HHS OIG List of Excluded Individuals/Entities. From October 17, 2016 to August 16, 2021, Medicare paid approximately $16,109,446.67 to the pharmacies in which P.M. had an ownership interest or managerial role.

On April 27, 2021, P.M. was charged in federal district court in the Northern District of Alabama with conspiracy to commit heath care fraud and wire fraud, health care fraud, and wire fraud relating to payment claims to Medicare despite his exclusion, Case Number 6:21-cr-00103-LSC-JHE. On August 25, 2021, P.M. entered a plea of guilty to the charges of conspiracy to commit heath care fraud, and health care fraud. On December 2, 2021, P.M. was sentenced by the court to a custodial sentence of seventy-eight months.

**B. MINGA Affirmatively Conceals P.M.'s Involvement with the Pharmacies Despite Her Knowledge of P.M.'s Exclusion.**

 Defendant's Initials km

**1. MINGA Becomes Aware of P.M.'s Exclusion.**

On June 27, 2018 **MINGA** sat for a deposition in civil litigation involving Priority Care Pharmacy. During this deposition, **MINGA** was shown a document from the website for the United States Department of Health and Human Services announcing P.M.'s exclusion. The announcement stated as follows: "On October 17, 2016, [P.M.], the owner of a durable medical equipment (DME) company, agreed to be excluded from participation in all Federal health care programs for a period of ten years under 42 U.S.C. § 1320a-7(b)(7) and 42 U.S.C. § 1320a-7(b)(16)." When asked directly, **MINGA** stated that she was unaware of P.M.'s exclusion:

Q. This is the first you're hearing that he was excluded?

A. Yes.

Q. Do you live with your husband?

A. Yes.

Q. Do you know whether your companies made any changes as a result of him having been excluded?

A. I don't know.

**2. MINGA Affirmatively Conceals P.M.'s Crime After Becoming Aware of P.M.'s Exclusion.**

MINGA signed or allowed others to sign numerous renewal applications for Alabama based pharmacies while she was listed as President of these pharmacies. These pharmacies include three Walker County, Alabama-based pharmacies:

 **Defendant's Initials** kmi

Bowie's Priority Care Pharmacy, LLC; Priority Care Pharmacy 2 LLC; and Vickers Pharmacy. After June 27, 2018, despite knowing about P.M.'s exclusion, **MINGA** continued to allow other employees to sign documents that only she had authority to sign, including Pharmacy Participation Agreements with Health Mart Atlas, LLC, verifying that no owner, pharmacist, or employee of the pharmacy has "been debarred or excluded from participation in federal or state health care programs." For example, **MINGA's** electronic signature appears on behalf of Priority Care Pharmacy 2 LLC on a Pharmacy Participation Agreement with Health Mart Atlas, LLC dated on or about October 23, 2018, in which **MINGA** represented that no owner, pharmacist, or employee of the pharmacy has "been debarred or excluded from participation in federal or state health care programs." However, an unwitting employee actually signed this Agreement with **MINGA's** permission.

Thus, having knowledge of a felony cognizable by a court of the United States, specifically P.M.'s Health Care Fraud under 18 U.S.C. § 1347, **MINGA** did not as soon as possible make known the same to some judge or other person in civil authority under the United States and concealed the same by affirmatively delegating signature authority to unwitting employees—who were unaware of P.M.'s exclusion—to represent that that no owner, pharmacist, or employee of the pharmacy has "been debarred or excluded from participation in federal or state health care programs." After June 27, 2018—the date **MINGA** received knowledge

 **Defendant's Initials** ___

of P.M.'s exclusion—the three Walker County, Alabama pharmacies listed above sought reimbursement from Medicare in the amount of $102,235.55.

**C. Venue**

The acts described above occurred within Walker County in the Northern District of Alabama and elsewhere. Venue is appropriate in the Northern District of Alabama.

**D. Stipulation**

**The defendant hereby stipulates that the facts stated above are substantially correct and that the Court can use these facts in calculating the defendant's sentence. The defendant further acknowledges that these facts do not constitute all of the evidence of each and every act that the defendant and/or and co-conspirators may have committed.**



**KONIE MINGA**

**III. RECOMMENDED SENTENCE**

The United States agrees that subject to the limitations in Section VIII regarding subsequent conduct and pursuant to Rule 11(c)(1)(B), Fed. R. Crim. P., it will recommend the following disposition:

a. That the defendant be awarded an appropriate reduction in offense level for acceptance of responsibility;



**Defendant's Initials** KM

b. That the defendant receive a sentence of home detention for a term consistent with the low end of the United States Sentencing Guideline range as determined by the court on the date the sentence is pronounced;

c. That following the said term of home confinement, the defendant be placed on supervised release for a period to be determined by the Court, subject to the standard conditions of supervised release as set forth in U.S.S.G § 5D1.3, and any special condition(s) ordered by the Court;

d. That the defendant pay a special assessment fee of $100, said amount due and owing as of the date sentence is pronounced.

## IV. WAIVERS

### A. ADMISSIONS IN PLEA AGREEMENT

**In consideration of the recommended disposition of this case, I, KONIE MINGA, hereby understand, acknowledge, and agree that, upon signing of this plea agreement, the facts that I have admitted under this plea agreement as set forth above, as well as any facts to which I admit in open court at the plea hearing, shall be admissible against me under Federal Rule of Evidence 801(d)(2)(A) in any subsequent proceeding, including a criminal trial, and I expressly waive my rights under Federal Rule of Criminal Procedure 11(f) and Federal Rule of Evidence 410 with regard to the facts I have admitted in**

**conjunction with this plea agreement.**

**B. STATUTE OF LIMITATIONS WAIVER**

**In consideration of the recommended disposition of this case, I, KONIE MINGA, hereby understand, acknowledge, and agree that if this Plea Agreement is set aside for any reason, I will not assert any defense based on any applicable statute of limitations from and including the date of this Plea Agreement until and including the date of entry of any order setting this Plea Agreement aside.**

**C. RIGHT TO APPEAL AND POST-CONVICTION RELIEF**

**In consideration of the recommended disposition of this case, I, KONIE MINGA, hereby waive and give up my right to appeal my conviction and/or sentence in this case, as well as any fines, restitution, and forfeiture orders, the court might impose. Further, I waive and give up my right to argue that: (1) the statutes to which I am pleading guilty are unconstitutional and (2) the admitted conduct does not fall within the scope of those statutes. Further, I waive and give up the right to challenge my conviction and/or sentence, any fines, restitution, forfeiture orders imposed or the manner in which my conviction and/or sentence, any fines, restitution, and forfeiture orders were determined in any post-conviction proceeding, including, but not limited to, a motion brought under 28 U.S.C. § 2255.**

**The defendant reserves the right to contest in an appeal or post-conviction proceeding the following:**

**a. Any sentence imposed in excess of the applicable statutory maximum sentence(s);**

**b. Any sentence imposed in excess of the guideline sentencing range determined by the Court at the time sentence is imposed; and**

**c. Ineffective assistance of counsel.**

The defendant acknowledges that before giving up these rights, the defendant discussed the Federal Sentencing Guidelines and their application to the defendant's case with the defendant's attorney, who explained them to the defendant's satisfaction. The defendant further acknowledges and understands that the Government retains its right to appeal where authorized by statute.

**I, KONIE MINGA, hereby place my signature on the line directly below to signify that I fully understand the foregoing paragraphs, and that I am knowingly and voluntarily entering into this waiver.**



**KONIE MINGA**

## V. UNITED STATES SENTENCING GUIDELINES

Defendant's counsel has explained to the defendant, that in light of the United States Supreme Court's decision in United States v. Booker, the federal sentencing

guidelines are **advisory** in nature. Sentencing is in the Court's discretion and is no longer required to be within the guideline range. The defendant agrees that, pursuant to this agreement, the Court may use facts it finds by a preponderance of the evidence to reach an advisory guideline range, and defendant explicitly waives any right to have those facts found by a jury beyond a reasonable doubt.

## VI. AGREEMENT NOT BINDING ON COURT

The defendant fully and completely understands and agrees that it is the Court's duty to impose sentence upon the defendant and that any sentence recommended by the government is **NOT BINDING UPON THE COURT**, and that the Court is not required to accept the government's recommendation. Further, the defendant understands that if the Court does not accept the government's recommendation, the defendant does not have the right to withdraw the guilty plea.

## VII. VOIDING OF AGREEMENT

The defendant understands that should the defendant move the Court to accept the defendant's plea of guilty in accordance with, or pursuant to, the provisions of North Carolina v. Alford, 400 U.S. 25 (1970), or tender a plea of nolo contendere to the charges, this agreement will become NULL and VOID. In that event, the Government will not be bound by any of the terms, conditions, or recommendations, express or implied, which are contained herein.

 **Defendant's Initials** km

## VIII. SUBSEQUENT CONDUCT

**The defendant understands that should the defendant violate any condition of pretrial release or violate any federal, state, or local law, or should the defendant say or do something that is inconsistent with acceptance of responsibility, the United States will no longer be bound by its obligation to make the recommendations set forth in Section III of the Agreement, but instead, may make any recommendation deemed appropriate by the United States Attorney in her sole discretion.**

## IX. OTHER DISTRICTS AND JURISDICTIONS

The defendant understands and agrees that this agreement **DOES NOT BIND** any other United States Attorney in any other district, or any other state or local authority.

## X. COLLECTION OF FINANCIAL OBLIGATION

In order to facilitate the collection of financial obligations to be imposed in connection with this prosecution, the defendant agrees to fully disclose all assets in which the defendant has any interest or over which the defendant exercises control, directly or indirectly, including those held by a spouse, nominee or other third party. The defendant also will promptly submit a completed financial statement to the United States Attorney's Office, in a form that it provides and as it directs. The defendant also agrees that the defendant's financial statement and disclosures will

 **Defendant's Initials** KM

be complete, accurate, and truthful. Finally, the defendant expressly authorizes the United States Attorney's Office to obtain a credit report on the defendant in order to evaluate the defendant's ability to satisfy any financial obligation imposed by the Court.

## XI. AGREEMENT REGARDING RELEVANT CONDUCT AND RESTITUTION

As part of the defendant's plea agreement, the defendant admits to the above facts associated with the charges and relevant conduct for any other acts. The defendant understands and agrees that the relevant conduct contained in the factual basis will be used by the Court to determine the defendant's range of punishment under the advisory sentencing guidelines. The defendant admits that all of the crimes listed in the factual basis are part of the same acts, scheme, and course of conduct. This agreement is not meant, however, to prohibit the United States Probation Office or the Court from considering any other acts and factors which may constitute or relate to relevant conduct. Additionally, if this agreement contains any provisions providing for the dismissal of any counts, the defendant agrees to pay any appropriate restitution to each of the separate and proximate victims related to those counts should there be any.

## XII. TAX, FORFEITURE AND OTHER CIVIL/ADMINISTRATIVE PROCEEDINGS

Unless otherwise specified herein, the defendant understands and

acknowledges that this agreement does not apply to or in any way limit any pending or prospective proceedings related to defendant's **tax liabilities**, if any, or to any pending or prospective **forfeiture** or other **civil** or **administrative** proceedings.

Defendant recognizes that pleading guilty may have consequences with respect to his immigration status if he is not a citizen of the United States. Under federal law, a broad range of crimes are removable offenses, including the offenses to which defendant is pleading guilty. Removal and other immigration consequences are the subject of a separate proceeding, however, and defendant understands that no one, including his attorney or the district court, can predict to a certainty the effect of his conviction on his immigration status. Defendant nevertheless affirms that he wants to plead guilty regardless of any immigration consequences that his plea may entail, even if the consequence is his automatic removal from the United States.

## XIII. DEFENDANT'S UNDERSTANDING

I have read and understand the provisions of this agreement consisting of ~~[illegible]~~ 18 **pages**. I have discussed the case and my constitutional and other rights with my lawyer. I am satisfied with my lawyer's representation in this case. I understand that by pleading guilty, I will be waiving and giving up my right to continue to plead not guilty, to a trial by jury, to the assistance of counsel at that trial, to confront, cross-examine, or compel the attendance of witnesses, to present evidence on my

behalf, to maintain my privilege against self-incrimination, and to the presumption of innocence. I agree to enter my plea as indicated above on the terms and conditions set forth herein.

**NO OTHER PROMISES OR REPRESENTATIONS HAVE BEEN MADE TO ME BY THE PROSECUTOR, OR BY ANYONE ELSE, NOR HAVE ANY THREATS BEEN MADE OR FORCE USED TO INDUCE ME TO PLEAD GUILTY.**

I further state that I have not had any drugs, medication, or alcohol within the past 48 hours except as stated here:

nA
________________________________________

I understand that this Plea Agreement will take effect and will be binding as to the Parties **only** after all necessary signatures have been affixed hereto.

I have personally and voluntarily placed my initials on every page of this Agreement and have signed the signature line below to indicate that I have read, understand, and approve all of the provisions of this Agreement, both individually and as a total binding agreement.

8/22/22
DATE

[signature]
**KONIE MINGA**
Defendant

## XIV. COUNSEL'S ACKNOWLEDGMENT

I have discussed this case with my client in detail and have advised my client of all of my client's rights and all possible defenses. My client has conveyed to me

 **Defendant's Initials** KM

that my client understands this Agreement and consents to all its terms. I believe the plea and disposition set forth herein are appropriate under the facts of this case and are in accord with my best judgment. I concur in the entry of the plea on the terms and conditions set forth herein.

8/22/22
DATE

**BRETT BLOOMSTON**
Defendant's Counsel

## XV. GOVERNMENT'S ACKNOWLEDGEMENT

I have reviewed this matter and this Agreement and concur that the plea and disposition set forth herein are appropriate and are in the interests of justice.

PRIM F. ESCALONA
United States Attorney

8/22/22
DATE

**LLOYD C. PEEPLES, III**
Assistant United States Attorney



**Defendant's Initials** ____